UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Bankr. Case No.  13-60831

Darin Larry Seifert,                                      MEMORANDUM OPINION
                                                                 AND ORDER

                    Debtor.

_____

At Fergus Falls, Minnesota, January 25, 2016.

This matter returns to the Court, after the Bankruptcy Appellate Panel for the Eighth

Circuit ("BAP") reversed and remanded, to resolve the debtor's disputed, claimed exemption of

farm proceeds under MINN. STAT. § 550.37, subd. 13.[1]  On August 25, 2015, the Court held a

reconvened status conference.  David C. McLaughlin appeared on behalf of the debtor.  Kyle

Carlson appeared in his capacity as the chapter 12 trustee.  Jon R. Brakke appeared on behalf of

CHS, Inc.  The Court then ordered the parties to file briefs, the last of which was submitted on

September 16, 2015.  Based on the submissions and the arguments of counsel, the Court enters

this memorandum opinion and order regarding the debtor's claimed exemption.

**Background**

Darin Larry Seifert ("Mr. Seifert" or "debtor"), a family farmer,[2] filed for relief under

chapter 12 of the Bankruptcy Code on December 23, 2013.  Like any debtor would, Mr. Seifert

claimed certain assets as exempt, from clothing to an automobile.  One divisive claimed

exemption, though, sparked a clash of views that resulted in a timely objection by CHS, Inc.,

_____

[1] In re Seifert, 533 B.R. 265 (B.A.P. 8th Cir. 2015).

[2] 11 U.S.C. § 101(18).

1

later joined in by the chapter 12 trustee:[3] the debtor's claimed exemption, under MINN. STAT. §

550.37, subd. 13, of $91,258.00 from a total amount of $134,661.00 representing farm proceeds

in the form of five checks made jointly payable to the United States Department of Agriculture-

Farm Service Agency ("FSA"), CHS, Inc., and Mr. Seifert.[4]

     Those farm proceeds served as collateral, together with other property, for the FSA; the

checks were tendered to the FSA and applied to the debtor's loan.  CHS, Inc. and the chapter 12

trustee argued that the claimed exemption issue was moot, because the debtor no longer had an

interest in those checks.  This Court agreed.  On appeal, however, the BAP held that "[t]he

parties' stipulation, incorporated into the proposed plan, reserved the issue of the disputed claim

of exemption for a later determination."  In re Seifert, 533 B.R. 265, 267 (B.A.P. 8th Cir. 2015).

This divide is now ripe for decision.

### Issues

(I)    Can the debtor exempt his farm proceeds under MINN. STAT. § 550.37, subd. 13?

(II)    If so, how much of his farm proceeds are exempt under that statute?

### Discussion

**(I)    Can the debtor exempt his farm proceeds under MINN. STAT. § 550.37, subd. 13?**

     Courts are equipped with tools to analyze exemption laws.  Generally speaking,

exemption statutes must be liberally construed in favor of debtors.  In re Hardy, 787 F.3d 1189,

1192 (8th Cir. 2015) ("We liberally construe exemption statutes in favor of debtors.").  Section

645.16 of the MINN. STAT. states, "The object of all interpretation and construction of laws is to

---

[3] For the Motion Objecting to the Debtor's Exemptions by CHS, Inc., see ECF No. 17.  For the chapter 12 trustee's joinder, see ECF No. 18.

[4] Other claimed exemptions by the debtor remain exempt, because no party of interest has objected to those.  11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt.").

ascertain and effectuate the intention of the legislature."  Indeed, the legislature has pronounced

its interests regarding family famers, "[t]he legislature finds that it is in the interests of the state

to encourage and protect the family farm as a basic economic unit, to insure it as the most

socially desirable mode of agricultural production, and to enhance and promote the stability and

well-being of rural society in Minnesota and the nuclear family."  MINN. STAT. § 500.24, subd. 1.

Furthermore, "[e]very law shall be construed, if possible, to give effect to all its provisions."

MINN. STAT. § 645.16.  Judge Nancy C. Dreher, in In re Irwin, echoed the statutory directive of

MINN. STAT. § 645.16, "Every law should be construed to give effect to all of its provisions.

That is, the statute should not be interpreted so that any word, phrase or sentence is superfluous."

In re Irwin, 232 B.R. 151, 152 (Bankr. D. Minn. 1999), aff'd, Civil No. 99-705 (DSD) (D. Minn.

June 7, 1999) (internal citations omitted).  Viewing MINN. STAT. § 550.37, subd. 13, in such light

compels the Court to liberally construe this exemption in favor of Mr. Seifert.  MINN. STAT. §

550.37, subd. 13.

Subdivision 13 of MINN. STAT. §  550.37 exempts, "All earnings not subject to

garnishment by the provisions of section 571.922."  MINN. STAT. § 571.922, which is explicitly

incorporated in MINN. STAT. § 550.37, subd. 13, guides the determination of what qualifies as

exempt earnings, and states in applicable part:

> (a) Unless the judgment is for child support, the maximum part of the aggregate
> *disposable earnings* of an individual for *any pay period* subjected to
> garnishment may not exceed *the lesser of*:
>
> (1)  25 percent of the debtor's disposable earnings; or
>
> (2)  the amount by which the debtor's disposable earnings exceed the following
> product: 40 times the federal minimum hourly wages prescribed by section
> 6(a)(1) of the Fair Labor Standards Act of 1938, United States Code, title 29,
> section 206(a)(1), in effect at the time the earnings are payable, times the
> number of work weeks in the pay period. When a pay period consists of other
> than a whole number of work weeks, each day of that pay period in excess of
> the number of completed work weeks shall be counted as a fraction of a work

3

> week equal to the number of excess workdays divided by the number of days
> in the normal work week.

MINN. STAT. § 571.922 (emphasis added).

Applying this exemption statute reveals that nothing in it places Mr. Seifert outside of its ambit.

The legislature has defined certain words in MINN. STAT. § 571.922, which contemplate farmers like Mr. Seifert. Of importance, "disposable earnings" in MINN. STAT. § 571.922 is a subset of "earnings."[5] Notably, "earnings" include "compensation paid or payable to the producer for the sale of agricultural products . . . produced when the producer is operating a family farm, a family farm corporation, or an authorized farm corporation, as defined in section 500.24, subdivision 2[.]" MINN. STAT. § 571.921. Here, the farm proceeds derived from the sale of crops produced by Mr. Seifert constitute "earnings" for purposes of this exemption; such farm proceeds fall well within the legislature's periphery.

However, the legislature did not stop there; it chose to distinguish MINN. STAT. § 571.922 from its federal counterpart, 15 U.S.C. § 1673,[6] in a manner that by operation necessarily

---

[5] Section 571.921 of MINN. STAT. defines "disposable earnings" as "that part of the earnings of an individual remaining after the deduction from those earnings of amounts required by law to be withheld." MINN. STAT. § 571.921.

[6] Section 1673 of Title 15 states in part:

(a) Maximum allowable garnishment

Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or
(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,

4

includes farmers like Mr. Seifert. Unlike 15 U.S.C. § 1673, which limits the "aggregate disposable earnings of an individual" to "any workweek" in addition to having a mechanism for the promulgation of regulations to deal with earnings made for pay periods other than a week, MINN. STAT. § 571.922 strikingly subscribes to an expansive view by not constraining its limits to identifiable time constraints, as represented by the phrase "any pay period." This legislative design allows farmers, like Mr. Seifert, whose "earnings" derived from agricultural products do not track a typical wage-earner's pay period, to have their "earnings" qualify here.

Reading MINN. STAT. § 550.37, subd. 13 to prohibit Mr. Seifert from exempting his farm proceeds would be turning a blind eye to legislative intent, and may have grave consequences for Minnesota's rural society. A presumption in ascertaining legislative intent includes, "the legislature intends the entire statute to be effective and certain." MINN. STAT. § 645.17. Reading Mr. Seifert's farm proceeds as being outside of the purview of the "earnings" definition of MINN. STAT. § 571.921 would be tantamount to "erasing" a portion of MINN. STAT. § 571.921. Such a result goes against a clear presumption in ascertaining legislative intent by rendering a portion of a statute ineffective.

In ascertaining legislative intent, the Court can consider, "the consequences of a particular interpretation." MINN. STAT. § 645.16. Here, the consequence of reading MINN. STAT. § 550.37, subd. 13 to exclude famers would cast a pall on the statute and would run contrary to legislative intent to "[e]ncourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the

---

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C. § 1673.

stability and well-being of rural society in Minnesota and the nuclear family." MINN. STAT. §

500.24, subd. 1.  Placing a fence around MINN. STAT. § 550.37, subd. 13, in relation to farmers in

bankruptcy invites the risk of instability to and the risk of reducing the well-being of

Minnesota's rural society.

For those reasons, the Court liberally construes this exemption in favor of Mr. Seifert.[7]

### (II)    How much of the debtor's farm proceeds are exempt under MINN. STAT. § 550.37, subd. 13?

The debtor can exempt $91,258.00 even though he has not fully journeyed the path paved

by MINN. STAT. § 571.922 to determine how much of his earnings are exempt under MINN. STAT.

§ 550.37, subd. 13.  The phrase "may not exceed the lesser of" read in conjunction with "or"

forces a comparison between (a)(1) and (a)(2) of MINN. STAT. § 571.922 to determine that

amount.  MINN. STAT. § 571.922.  The debtor relies solely upon MINN. STAT. § 571.922(a)(1) in

claiming an exemption of $91,258.00.  ECF No. 98 at 1.  In doing so, the debtor ignores the

computation required by MINN. STAT. § 571.922(a)(2), resulting in a failure to compare (a)(1)

and (a)(2) of MINN. STAT. § 571.922 to determine "the maximum part of the aggregate

disposable earnings of an individual for any pay period subjected to garnishment [which] *may*

---

[7]  CHS, Inc. and the chapter 12 trustee argue that allowing the debtor's claimed exemption
violates Minn. Const. art. I, sec. 12, because the claimed exemption exceeds a "reasonable
amount."  *See* ECF Nos. 96 at 6, and 97 at 7.  Article I, section 12 of the Minnesota Constitution
states in part, "[a] reasonable amount of property shall be exempt from seizure or sale for the
payment of any debt or liability.  The amount of such exemption shall be determined by law."  In
In re Tveten, 402 N.W.2d 551, 558 (Minn. 1987), the Minnesota Supreme Court held that a
"reasonable amount of property" may, among other ways, pass constitutional scrutiny if the
limitation on the exemption is based upon an objective criteria.  The restraint upon courts to rule
statutes as unconstitutional is enshrined by the words of that same court, "Minnesota statutes are
presumed constitutional, and our power to declare a statute unconstitutional should be exercised
with extreme caution and only when absolutely necessary.  The party challenging a statute has
the burden of demonstrating beyond a reasonable doubt a violation of some provision of the
Minnesota Constitution."  In re Haggerty, 448 N.W.2d 363, 364 (Minn. 1989) (internal citations
omitted).  Simply put, MINN. STAT. § 571.922 provides an objective criteria to place a limit on a
reasonable amount of exemptible property under Minn. Const. art. I, sec 12.

*not exceed the lesser of* [(a)(1) or (a)(2) of MINN. STAT. § 571.922.]" MINN. STAT. § 571.922

(emphasis added). The debtor, though, has provided enough information to allow a claimed

exemption of $91,258.00 under MINN. STAT. § 550.37, subd. 13.

A comparison between subsections (a)(1) and (a)(2) of MINN. STAT. § 571.922 shows that

$91,258.00 of this claimed exemption on Schedule C is allowable. Section 571.922(a)(1) of

MINN. STAT. limits earnings subject to garnishment to "25 percent of the debtor's disposable

earnings," which is $33,665.25.[8] MINN. STAT. § 571.922(a)(1). Section 571.922(a)(2) of MINN.

STAT. here equals at least $119,581.00 based on a reasonable inference that the debtor's pay

period does not exceed a year.[9] Id. at (a)(2). Thus, because it is less than the amount computed

under MINN. STAT. § 571.922(a)(2) of $119,581.00, MINN. STAT. § 571.922(a)(1) applies to Mr.

Seifert's "earnings" of $134,661.00, resulting in $33,665.25 being subject to garnishment;

therefore, $100,995.75 is available to be claimed by him as exempt. Id. at (a)(1), (2). As such,

the debtor may claim $91,258.00 as exempt.[10]

---

[8] To arrive at $33,665.25, the Court used the following formula: MINN. STAT. § 571.922(a)(1) = (Disposable Earnings multiplied by .25). $33,665.25 = ($134,661.00 × .25).

[9] To arrive at $119,581.00, the Court used the following formula: MINN. STAT. § 571.922(a)(2) = [Disposable Earnings – (40 multiplied by the applicable federal minimum hourly wages under 29 U.S.C. § 206(a)(1) multiplied by the number of work weeks in the pay period)]. $119,581.00 = [$134,661.00 – (40 × $7.25 × 52)].

The Court inferred that the debtor's pay period covering these farm proceeds can at most be 52 weeks, since the debtor explained, "[t]he Legislature recognized that farmers really have one 'pay day' per year and recognized that those amounts are necessary for the family farm to survive." ECF No. 98 at 5. If the debtor's "pay day" in relation to these farm proceeds happen once a year, then that suggests that these farm proceeds took at most a year to generate.

[10] It remains unclear from the record why Mr. Seifert claimed this amount, rather than $100,995.75. Cf. MINN. STAT. § 571.921(b) ("'Disposable earnings' means that part of the earnings of an individual remaining *after the deduction from those earnings of amounts required by law to be withheld*.") (emphasis added).

**Conclusion**

Therefore, the debtor is entitled to claim $91,258.00 of his farm proceeds as exempt

under MINN. STAT. § 550.37, subd. 13.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. The objection to the debtor's claimed exemption by CHS, Inc and the chapter 12 trustee's joinder thereto is **OVERRULED**.

2. The debtor's claimed exemption in the amount of $91,258.00 is **ALLOWED**.

*/e/ Michael E. Ridgway*

Michael E. Ridgway
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *01/25/2016*
Lori Vosejpka, Clerk, by MJS

8